**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────────

**RYLEE J. C.,**

                         **Plaintiff,**

v.                                                      **5:22-cv-0331**

**COMMISSIONER OF SOCIAL SECURITY,**

                         **Defendant.**
───────────────────────────────────

**THOMAS J. MCAVOY**
**Senior United States District Court Judge:**

                    **DECISION and ORDER**

        Plaintiff Rylee J. C. ("plaintiff" or "claimant") brings this action pursuant to the Social

Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of

Social Security ("Commissioner" or "defendant") denying her application for Social Security

Disability ("SSD") benefits.  (Dkt. No. 1).  Plaintiff alleges that the Administrative Law Judge's

("ALJ") decision denying her application for benefits was not supported by substantial evidence

and contrary to the applicable legal standards.  (Dkt. No. 9).  Pursuant to Northern District of

New York General Order No. 8, the Court proceeds as if both parties had accompanied their

briefs with a motion for judgment on the pleadings.

**I.    PROCEDURAL HISTORY**

        On March 18, 2020, Plaintiff filed an application for Title II SSD benefits, alleging

disability beginning September 15, 2018, due to rheumatoid arthritis, fibromyalgia, attention

deficit hyperactivity disorder ("ADHD"), and depression.  Administrative Record ("R") at 14,

52, 164.  Her claim was denied initially on June 30, 2020, and upon reconsideration on

September 9, 2020.  R. 58, 66.  Following a hearing held on February 26, 2021 (R. 27–51),

Administrative Law Judge ("ALJ") David Romeo issued an unfavorable decision on March 16,

2021.  (R. 14–21).  On February 18, 2022, the Appeals Council denied review of the decision,

(R. 1–3), making the ALJ's decision the final determination of the Commissioner.  This action

followed.  This Court has jurisdiction under 42 U.S.C. § 405(g).

## II.    LEGAL STANDARDS

### A.    Standard of Review

"District courts review a Commissioner's final decision pursuant to 42 U.S.C §§ 405(g)

and 1383(c)(3), and 'may only set aside a determination by the Commissioner if it is based on

legal error or not supported by substantial evidence in the record.'"  *Hill v. Comm'r of Soc.

Sec.*, No. 1:19-CV-5096, 2020 WL 5768726, at *5 (S.D.N.Y. Sept. 28, 2020) (quoting *Cole v.

Colvin*, 12-cv-8597, 2014 WL 1224568, at "*2 (S.D.N.Y. Mar. 24, 2014)).  "Accordingly, [a

court] must 'conduct a plenary review of the administrative record to determine if there is

substantial evidence, considering the record as a whole, to support the Commissioner's decision

and if the correct legal standards have been applied.'"  *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d

Cir. 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).  A court "will

overturn a SSA decision only if the ALJ applies an incorrect legal standard, or if the ALJ's

ruling is not supported by substantial evidence."  *Id.* (citation omitted).  "The substantial

evidence standard is 'not high.'"  *Id.* (quoting *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir.

2022) (quotation marks omitted)).  "It is 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'"  *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 127

(2d Cir. 2008) (quotation marks omitted)).  Properly applied, this standard is highly deferential

to the presiding ALJ, "who has seen the hearing up close." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

"[O]nce an ALJ finds facts, [the Court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original).  The Court must not re-weigh evidence, assess the reliability of witnesses, or otherwise substitute its judgment for the ALJ's.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations.  *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).  "However, this 'deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law.'" *Kenneth H. v. Commr. of Soc. Sec.*, 6:21-CV-324, 2022 WL 2954364, at *3 (N.D.N.Y. July 26, 2022) (quoting *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)).  "Thus, 'where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards,' the decision should not be affirmed." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).  "This is so regardless of whether or not the decision is otherwise supported by 'substantial evidence.'" *Id.* (citing *Johnson*, 817 F.2d at 986).  Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

B.      Determination of Disability

To obtain disability benefits, the claimant must prove that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). The Commissioner evaluates disability claims using the five-step sequential process set forth in 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of proof at steps one through four, which includes establishing her residual functional capacity ("RFC"). *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

A plaintiff's RFC is defined as "what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)). If the claimant reaches step five, the Commissioner must produce evidence that the claimant could perform a significant number of jobs given her age, education, work experience, and RFC. *Id.* Generally, the Commissioner can rely on vocational expert testimony for that purpose. *Biestek*, 139 S. Ct. at 1148, 1152.

III.    FACTUAL BACKGROUND

A.      Age, Education, and Work Experience

Plaintiff was 21 years old as of December 31, 2018. R. 16, 31. She has an eleven

grade education, and reported past work as an assistant manager at a gas station and as a pizza delivery driver.  R. 33, 165.

### B.    Clinical Evidence

Plaintiff has a history of rheumatoid arthritis pain and has been diagnosed with juvenile idiopathic arthritis.  R. 362, 491.  On March 21, 2018, Plaintiff saw rheumatologist Sheetal Rayancha, M.D., and she reported a history of left hip pain and joint pain with swelling in both hands, as well as low back pain.  R. 409–10.  On examination, Plaintiff had chronic deformities in the second DIP (distal interphalangeal) joints of both hands.  R. 410.  She was assessed with polyarthralgias in the hands, left hip, and low back.  R. 411.  She was prescribed methotrexate. R. 412.

On July 17, 2018, Plaintiff returned to Dr. Rayancha and reported pain in the left hip, pain in both legs with activity, and joint swelling in both hands.  R. 412.  Diagnoses included seronegative juvenile arthritis, cervical spine arthritis, low back pain, and fibromyalgia.  R. 415. Dr. Rayancha adjusted Plaintiff's medications.  R. 414.  On August 30, 2018, Plaintiff established care with treating physician Anthony D. Rotella, D.O.  R. 480.  Dr. Rotella noted Plaintiff's diagnosis of juvenile arthritis.  R. 480.

On October 17, 2018, Plaintiff saw Dr. Rayancha and reported increased neck and shoulder pain.  R. 250.  Plaintiff was currently on methotrexate, 20 milligrams weekly, and folic acid daily.  R. 250.  A past trial of Humira was also noted.  R. 250.  Plaintiff also reported that she continued to experience joint pain flare-up.  R. 252.  On examination, Plaintiff had decreased range of motion in the left hip, and chronic deformities in the second DIP joints in both hands. R. 250.  Plaintiff was assessed with juvenile arthritis and cervical spine arthritis.  R. 252.  A trial of Humira was initiated to help control Plaintiff's increased neck pain.  R. 252.

On January 22, 2019, Plaintiff saw Dr. Rayancha and reported that she continued to suffer from constant neck and hip pain.  R. 256.  She also reported occasional swelling and morning stiffness in her hands.  R. 256.  On examination, Plaintiff had decreased movement in the left hip and chronic deformities in the second DIP joints in both hands.  R. 258.  She was advised to continue taking methotrexate weekly, folic acid daily, and Humira every 14 days.  R. 258.

On August 27, 2019, Plaintiff reported to Dr. Rayancha that she had increasing hip pain, radiating down her left leg, neck pain, back stiffness, and widespread joint pain.  R. 259.  She said that after an hour of activity, "everything hurts."  R. 259.  Humira was discontinued and a trial of Enbrel was initiated.  R. 261.  On November 27, 2019, Plaintiff reported some improvement in her joint pain, with the exception of her left hip.  R. 262.  Her neck pain had somewhat improved with the Enbrel.  R. 262.  She was advised to continue taking Enbrel and methotrexate.  R. 264.

On March 10, 2020, Plaintiff reported that Enbrel made her joint pain worse.  R. 265.  She also reported right hip pain, numbness and tingling in her legs, and pain in her hands.  R. 265.  On March 18, 2020, Plaintiff saw Brian Johnson, M.D., for a psychiatric evaluation.  R. 271.  Plaintiff presented with generalized joint pain prominent in her left hip and bilateral lower extremities.  R. 275.  Plaintiff's presentation was consistent with fibromyalgia because she had 16 positive tender points on physical examination.  R. 275.  She was prescribed naltrexone for fibromyalgia.  R. 287.

On March 25, 2020, a rheumatology progress note indicated that Plaintiff reported tenderness in the left lateral hip, and she walked with a limp.  R. 300.  It was noted that she had been treated with Humira and Enbrel in the past but could not tolerate the side effects.  R. 301.

On March 26, 2020, Plaintiff received an infusion of Simponi into her right hand.  R. 296.  On April 22, 2020, Plaintiff received an infusion into her left hand.  R. 305.  Infusion therapy continued in June 2020.  R. 309.

On June 25, 2020, Plaintiff presented to orthopedic surgeon John Parker, M.D., for an evaluation of her chronic bilateral hip pain/dysfunction.  R. 336.  On examination, Plaintiff had an antalgic gait and crepitation with hip movement.  R. 338.  A review of x-rays from July 2016 revealed "grossly abnormal morphology in the proximal femur on the left side."  R. 338.  Additional x-rays showed end-stage degenerative changes of the left hip.  R. 338.  Plaintiff was assessed with primary osteoarthritis of the left hip, and Dr. Parker recommended hip replacement surgery.  R. 338.

On August 20, 2020, Plaintiff underwent a total left hip replacement surgery, performed by Dr. Parker.  R. 339–41.  The pre-operative report reflects that Plaintiff "has been dealing with chronic pain in her hips for the past 11 years."  R. 362.  On September 15, 2020, Plaintiff saw Dr. Rotella and reported "doing better" with her hip pain but that other joint pain was flaring up.  R. 435.  On examination, Plaintiff had tenderness to palpation and muscle spasm over the cervical and lumbar paraspinal muscles.  R. 438.  She was assessed with juvenile idiopathic arthritis, arthralgia of the pelvis/hip/femur, lumbago, cervicalgia, and depression with anxiety.  R. 438.

On October 28, 2020, Plaintiff saw Dr. Rayancha for follow-up regarding polyarticular juvenile arthritis and Simponi infusion.  R. 518.  Plaintiff reported ongoing joint pain.  R. 520.  It was noted that her juvenile arthritis likely evolved into rheumatoid arthritis.  R. 521.  Plaintiff was to restart methotrexate and Simponi infusions.  R. 521.

On January 6, 2021, Plaintiff saw Dr. Rotella and continued to report joint and neck pain, despite her medications.  R. 424.  On examination, Plaintiff had tenderness over the lateral right wrist, bony tenderness over the proximal right ulna, positive Finkelstein's test on the right wrist, and negative Tinel's sign.  R. 428.

### C.      Opinion Evidence

On September 15, 2020, Dr. Rotella completed a medical source statement for Plaintiff.  R. 346–49.  Diagnoses included depression/anxiety, juvenile arthritis, and hip pain, with symptoms listed as pain and decreased range of motion.  R. 346.  He opined that Plaintiff could: 1) sit and stand for 15 minutes at a time; 2) sit for about two hours; and 3) stand/walk for less than two hours total in an eight-hour workday.  R. 346–47.  She would require hourly, unscheduled breaks, lasting 10 to 15 minutes.  R. 348.  She could only occasionally lift 10 pounds and could frequently lift less than 10 pounds.  R. 347.  She could only rarely look down, turn her head right or left, look up, or hold her head in a static position.  R. 347.  She could occasionally use her hands and fingers for grasping, turning/twisting objections, and fine manipulations.  R. 347.  She would be expected to be off-task more than 20 percent of the workday.  R. 348.  She would be expected to be absent more than four days per month due to her impairments.  R. 348.

On June 29, 2020, non-examining state agency medical consultant T. Schmidt-Deyoung, M.D., concluded that Plaintiff suffers from the severe impairment of inflammatory arthritis, but also found there was insufficient evidence to evaluate Plaintiff's residual functional capacity within the relevant period.  R. 54–55.  These findings were confirmed on reconsideration by non-examining state agency consultant A. Auerbach, M.D.  R. 62–63.

### D.      Hearing Testimony

Plaintiff testified that she stopped working in 2018 because it put too much stress on her body.  R. 35.  She said that she suffers from rheumatoid arthritis, which affects most of the joints in her body, including her elbows, hands, wrists, knees, and ankles.  R. 36–37.  Her worst pain is in her neck and back.  R. 36.   According to Plaintiff, her arthritic pain is constant, and she feels like she has "a bunch of tiny knives inside [her joints]."  R. 37.  She has been suffering from hip joint pain since her youth, which worsened over time.  R. 37–38.

Plaintiff testified that her left hip joint deteriorated to the point where she could barely walk, and she had a hip replacement surgery in August 2020.  R. 37.  Despite the surgery, Plaintiff said that she has difficulty sitting and standing.  R. 38.  She is also very limited in bending and has needed assistance putting on her socks and shoes "for quite a while now."  R. 39.  According to Plaintiff, she does not do any sweeping, mopping, or carry laundry.  R. 40.  Plaintiff said that she also suffers from tendinitis in her right wrist and hand, such that repetitive use causes her a great deal of pain.  R. 44.  She has "bad days" three to five days per week, where she must stay in bed or on the couch.  R. 46.  Plaintiff said that she has tried changing positions frequently throughout the day, but it does not alleviate her pain.  R. 48.

## IV.   THE ALJ's DECISION

The ALJ engaged in the five-step analysis required by 20 C.F.R. § 416.920(a) to determine whether Plaintiff qualified for disability benefits.  The ALJ found that Plaintiff did not engage in substantial activity during the relevant period from her alleged onset date of September 15, 2018 through her date last insured of December 31, 2018.  R. 16.  The ALJ found that Plaintiff had two severe impairments: cervical spine arthritis and seronegative juvenile arthritis.  R. 16.  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a regulatory listing. R. 17.  Next, the ALJ found that Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).  R.

17.  The ALJ determined that through the date last insured, Plaintiff was capable of performing her past relevant work as a cashier.  R. 19.  The ALJ found that considering Plaintiff's age, education, work experience, and RFC, a finding of "not disabled" was directed by Medical-Vocational Rule 202.17.  R. 20.  Thus, the ALJ concluded that Plaintiff was not under a disability during the relevant period.  R. 21.

## V.   DISCUSSION

### A.   The Parties' Arguments

On appeal, Plaintiff argues that the ALJ's RFC is unsupported by substantial evidence because he failed to properly evaluate the opinion of Dr. Rotella and provided invalid reasons for rejecting the opinion.  (Dkt. No. 9).  Plaintiff also contends that, absent Dr. Rotella's opinion, the the ALJ improperly determined Plaintiff's RFC without any medical opinion to support it.  (*Id.*).  In response, the Commissioner asserts that substantial evidence supports the ALJ's determination of Plaintiff's RFC, and that the ALJ reasonably found Dr. Rotella's opinion to be unpersuasive.  (Dkt. No. 11).  The Commissioner also contends that the ALJ was not required to rely on a medical opinion.  (*Id.*).

### B.   Assessing Medical Opinions

Under the new regulations applicable to Plaintiff's claim, the Commissioner will no longer give specific evidentiary weight to medical opinions.  *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891, 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022); *see Wanda N. v. Comm'r of Soc. Sec.*, No. 6:21-CV-00358, 2022 WL 4376484, at *6 (N.D.N.Y. Sept. 22, 2022).  "Rather, the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on: supportability; consistency; relationship with the claimant (which includes the length of treatment relationship, frequency of examinations, purpose and extent of

the treatment relationship, and examining relationship); specialization; and 'other factors.'"
*Elizabeth P.*, 2022 WL 507367, at *4 (quoting 20 C.F.R. § 404.1520c(a)-(c)).

"The regulations explain that when 'evaluat[ing] the persuasiveness of medical opinions
and prior administrative medical findings,' the 'most important factors ... are supportability ...
and consistency.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. 2022)
(summary order) (footnote omitted) (quoting 20 C.F.R. § 404.1520c(a)); *see also Raymond M. v.
Comm'r of Soc. Sec.*, No. 5:19-CV-1313, 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) ("At
their most basic, the amended regulations require that the ALJ explain her findings regarding the
supportability and consistency of each of the medical opinions, 'pointing to specific evidence in
the record supporting those findings.'") (citing *Jacqueline L. v. Commissioner*, No. 6:19-CV-
6786, 2021 WL 243099, at *6 (W.D.N.Y. January 26, 2021)).

"'Supportability' means '[t]he more relevant the objective medical evidence and
supporting explanations presented by a medical source are to support his or her medical
opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions
or prior administrative medical finding(s) will be.'" *Celia A. B. v. Commr. of Soc. Sec.*, 5:21-
CV-112, 2022 WL 4225540, at *4 (N.D.N.Y. Sept. 13, 2022) (quoting 20 C.F.R. §
404.1520c(c)(1)); *see Andrea G. v. Commr. of Soc. Sec.*, 5:20-CV-01253, 2022 WL 204400, at
*4 (N.D.N.Y. Jan. 24, 2022) ("Under the supportability factor, the more a medical opinion or
prior administrative medical finding is reinforced by 'relevant ... objective medical evidence and
supporting explanations,' the 'more persuasive' it will be.") (quoting 20 C.F.R. §
404.1520c(c)(1), and citing *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532,
2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a

11

medical source supported their opinion(s) with objective medical evidence and supporting

explanations.")).

"'Consistency' means '[t]he more consistent a medical opinion(s) or prior administrative

medical finding(s) is with the evidence from other medical sources and nonmedical sources in

the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s)

will be.'" *Celia A. B.*, 2022 WL 4225540, at *4 (quoting 20 C.F.R. § 404.1520c(c)(2)).

As Judge Hummel recently explained:

> "If the ALJ fails adequately to explain the supportability and consistency
> factors, or bases [his or] her explanation upon a misreading of the record,
> remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-
> CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020),
> report and recommendation adopted, 2021 WL 134945 (S.D.N.Y. Jan. 14,
> 2021) (citation and quotation marks omitted). . . .

> "[T]he ALJ's conclusion [need] not perfectly correspond with any of the
> opinions of medical sources cited in his [or her] decision, [and] he [or she]
> [i]s entitled to weigh all of the evidence available to make an RFC finding
> that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F.
> App'x 53, 56 (2d Cir. 2013) (summary order).  The Court "defer[s] to the
> Commissioner's resolution of conflicting evidence[.]" *Smith v. Berryhill*,
> 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citation and
> quotation marks omitted).  Therefore, even if a plaintiff disagrees with the
> ALJ's assessment of opinion evidence and can point to evidence in the
> record to support his or her position, "whether there is substantial evidence
> supporting the [plaintiff's] view is not the question [ ]; rather, [the Court]
> must decide whether substantial evidence supports the ALJ's decision."
> *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary
> order) (emphasis omitted). The ALJ must not "ignore evidence or cherry
> pick only the evidence from medical sources that support a particular pick
> only the evidence from medical sources that support a particular conclusion
> and ignore the contrary evidence" but "[t]he Court will not reweigh the
> evidence that was before the ALJ."  *April B. v. Saul*, No. 8:18-CV-682
> (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and
> internal quotation marks omitted).

> "It is well settled that, under both the old and new regulations concerning
> the evaluation of medical evidence, an ALJ may rely on the opinion of a
> non-examining state agency consultant in disability claims." *Amber H. v.*

*Saul*, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at \*5 (N.D.N.Y. May
24, 2021).   "[A]n ALJ need not recite every piece of evidence that
contributed to the decision, so long as the record permits [the reviewing
court] to glean the rationale of an ALJ's decision."  *Renalda R. v. Comm'r
of Soc. Sec.*, 20-CV-0915 (TWD), 2021 WL 4458821, at \*5 (N.D.N.Y. Sept.
29, 2021) (citations and quotation marks omitted).

*Elizabeth P.*, 2022 WL 507367, at \*4.  If the RFC assessment conflicts with an opinion from a

medical source, "the adjudicator must explain why the opinion was not adopted."  Social

Security Ruling 96-8p, at \*7 (July 2, 1996).  The failure to do so is grounds for remand.  *See

Herrera v. Comm'r of Soc. Sec.*, No. 20-CV-6211, 2022 WL 4643044, at \*7 (E.D.N.Y. Sept. 30,

2022).

###   C.   Analysis

####   1.   The ALJ Erred in Analyzing Dr. Rotella's Opinion

As discussed above, Dr. Rotella submitted an opinion in September 2020 which found

that Plaintiff had extensive limitations in her physical abilities due to arthritis and related pain.

The ALJ summarized this opinion and found that it was not persuasive.  R. 19.  Notably, the

ALJ misidentified the author of the opinion as "Audrey Radcliffe, M.D." and failed to recognize

that it was submitted by Plaintiff's primary care physician, Dr. Rotella.  R. 19.  The ALJ gave

the following explanation for rejecting the opinion: "[i]t was rendered years after the expiration

of the date last insured, and extensive limitations opined are not consistent with the relatively

limited objective medical evidence available prior to the date last insured."  R. 19.

First, Plaintiff contends that "the ALJ's reliance on the date the opinion was rendered as

a basis for rejecting same is misplaced."  (Dkt. No. 9, at 12).  Plaintiff points out that she

established care with Dr. Rotella in August of 2018.  (*Id.*).  However, Dr. Rotella's opinion only

addressed the period from January to September 2020.  *See* R. 349.  In other words, Dr. Rotella

did not assess Plaintiff's limitations for the relevant time period from September 15, 2018 to

December 31, 2018.  Further, as the Commissioner points out, "there is nothing in the record to suggest that Dr. Rotella's 2020 opinion was informed by Plaintiff's presentation around the time of the relevant period."  (Dkt. No. 11, at 10).  In sum, the Court finds no error in the ALJ's decision to discount Dr. Rotella's opinion because it post-dated the relevant time period.

Second, Plaintiff argues that "[t]he ALJ also committed legal error in his limited discussion of the supportability and consistency factors with respect to his evaluation of the opinion."  (Dkt. No. 9, at 13).  Supportability and consistency are the most important factors in evaluating a medical source's opinion, and the ALJ is required to *explicitly* address them.  *See* 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions ... in your determination or decision.").  Here, the Court finds no error in the ALJ's analysis of the consistency factor: that the extensive limitations opined by Dr. Rotella "are not consistent with the relatively limited objective medical evidence available prior to the date last insured."  R. 19.  While somewhat cursory, the ALJ's analysis can be reasonably read to incorporate his discussion earlier in the decision about the medical evidence as a whole and how it was not consistent with serious limitations.  R. 18.

As to supportability, the ALJ's analysis of Dr. Rotella's opinion does not mention this factor at all.  There is no discussion whatsoever of "the objective medical evidence and supporting explanations" presented by Dr. Rotella to support his opinion.  20 C.F.R. § 416.920c(c)(1).  The Commissioner does not appear to recognize this omission.  However, the Court cannot overlook the ALJ's failure to explain the supportability of Dr. Rotella's opinion, which was procedural error.  *See Robert T.S. v. Comm'r of Soc. Sec.*, No. 21-CV-38, 2022 WL 1746968, at *6 (N.D.N.Y. May 31, 2022) (observing that the ALJ "is required to discuss the

14

supportability of every medical opinion in the record," and [t]he failure to do so amounts to legal error"); *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (finding that the ALJ erred by failing to adequately apply the supportability factor because the ALJ "did not examine what [the doctors] used to support their opinions and reach their ultimate conclusions").

### 2.   The RFC Is Not Supported by Substantial Evidence

Next, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because, having rejected Dr. Rotella's opinion, "there was no competent opinion by any physician to guide the ALJ in assessing Plaintiff's RFC."  (Dkt. No. 9, at 19).  In response, the Commissioner contends that the ALJ was not required to rely on a medical opinion and that substantial evidence supports the RFC determination.  (Dkt. No. 11, at 3–9, 13–15).

Notably, the Regulations state that the ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. *See* 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. §§ 404.1513(a)(1)–(4), 416.913(a)(1)–(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).  Thus, "an ALJ is permitted to craft an RFC based on medical records and other evidence, without a supportive medical opinion at all." *Lisa K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1867 (DB), 2022 WL 2317968, at *8 (W.D.N.Y. June 28, 2022) (collecting cases) (citations omitted).  Nonetheless, the ALJ must cite substantial evidence for the RFC.

Here, the ALJ found that during the relevant time period Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).  R. 17.  The Regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  "The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8–hour workday, with sitting occurring intermittently during the remaining time."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009).

In determining Plaintiff's RFC, the ALJ rejected Dr. Rotella's opinion, as well as those given by State agency medical consultants T. Schmidt-Deyoung, M.D. and J. Ochoa, Psy.D., who opined that "the record is insufficient to adjudicate the claimant's allegations during the period under review."  R. 19.  Instead, the ALJ cited a smattering of other evidence to support the RFC.  R. 18.  However, on close inspection, this evidence is incomplete, inaccurate, and inadequate to show Plaintiff's ability to do light work.  Although the ALJ briefed noted Plaintiff's treatment with a rheumatologist, he did not mention Dr. Rayancha by name, nor did he discuss the doctor's treatment notes in any detail.  Over the course of that treatment, some of which occurred during the relevant time period, Plaintiff consistently reported hip and neck pain, was diagnosed with juvenile arthritis and cervical spine arthritis, and Dr. Rayancha prescribed various medications and infusions to treat Plaintiff's pain.  R. 409–15, 250–264.  Notably, this included prescribing Humira to treat neck pain on October 17, 2018, which

16

contradicts the ALJ's finding that Plaintiff was "prescribed only over-the-counter medications to treat her pain." *Compare* R. 19 and R. 252.

The ALJ also found that "there is no evidence that [Plaintiff's hip] condition affected her functional abilities prior to the expiration of the date last insured." R. 19. But this finding is contradicted by Dr. Rayancha's notation that Plaintiff had decreased movement in her left hip in October 2018. R. 250. And while the ALJ observed that Plaintiff underwent left hip replacement surgery in August 2020 and improved thereafter, he appears to ignore the fact that the surgery was only necessary because Plaintiff's hip had been deteriorating for years, including during the relevant time period in late 2018, as evidenced by Dr. Rayancha's treatment notes. In sum, although the ALJ was not required to rely on a medical opinion, he mischaracterized the record, failed to account for relevant treatment notes, and did not cite substantial evidence in determining Plaintiff's RFC.

### 3. Remand is Required

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405(g)). In this case, remand is necessary because the ALJ did not apply the required regulatory factors with respect to Dr. Rotella's opinion and the RFC is not supported by substantial evidence. On remand, Plaintiff shall be permitted to submit any additional medical evidence relating to her condition, impairments, and limitations during the relevant time period; the Court notes that the ALJ's review might benefit from a more detailed opinion from Dr. Rotella and/or an opinion from Dr. Rayancha. Once the record is complete, the ALJ is directed to re-evaluate Plaintiff's claim in accordance with this Decision.

## VI.     CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, (Dkt. No. 11), is **DENIED**, and Plaintiff's motion for judgment on the pleadings, (Dkt. No. 9), is **GRANTED**.  The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

Dated: 5/1/2023

Thomas J. McAvoy
Senior, U.S. District Judge

18